TOWNSEND AND TOWNSEND AND CREW LLP
MARC M. GORELNIK (State Bar No. 166833)
NANCY L. TOMPKINS (State Bar No. 183623)
MARY L. SHAPIRO (State Bar No. 201199)
Two Embarcadero Center, 8th Floor
San Francisco, CA  94111
Telephone:  (415) 576-0200
Facsimile:  (415) 576-0300

*Attorneys for Plaintiff*
CSL, L.L.C.

SEYFARTH SHAW LLP
KENNETH L. WILTON (SBN:  126557)
2029 Century Park East, Suite 3300
Los Angeles, CA  90067-3036
Telephone:  (310) 177-7200
Facsimile:  (310) 201-5219

*Attorneys for Defendant*
IMPERIAL BUILDING PRODUCTS, INC. and
*Defendant and Counterclaimant*
IMPERIAL BRUSH CO., LTD.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CSL, L.L.C., a Florida limited liability company, | Case No. C 03-05566 JCS |
| Plaintiff, | **STIPULATION RE: ORDER OF NOVEMBER 21, 2006** |
| v. | |
| IMPERIAL BUILDING PRODUCTS, INC., a company organized under the laws of Canada, and IMPERIAL BRUSH CO., LTD., a company organized under the laws of Canada, | |
| Defendants. | |

1    The Court's Order of November 21, 2006 is under seal. Plaintiff CSL L.L.C. and Defendants

2    Imperial Building Products, Inc. and Imperial Brush Co., Ltd., by and through their attorneys, agree

3    that a public version of the Court's Order of November 21, 2006, may be placed on the public docket

4    provided it incorporates the redactions shown in Exhibit A hereto.

5        The parties would also like to note to the Court that CSL is errantly referred to as "CLS" on

6    page 9, line 15 of the Order.

7

8    DATED: December 1, 2006                 Respectfully submitted,

9                                           TOWNSEND AND TOWNSEND AND CREW LLP
                                            MARC M. GORELNIK
10

11

12                                          By:  /s/ Marc M. Gorelnik
                                                 Marc M. Gorelnik
13                                          Attorneys for Plaintiff CSL, L.L.C.

14

15   DATED: December 1, 2006                 Respectfully submitted,

16                                           TOWNSEND AND TOWNSEND AND CREW LLP
                                             MARC M. GORELNIK
17

18

19                                          By:  /s/ Kenneth L. Wilton
                                                 Kenneth L. Wilton
20                                          Attorneys for Defendant IMPERIAL BUILDING
                                            PRODUCTS, INC. and Defendant and Counterclaimant
21                                          IMPERIAL BRUSH CO., LTD.

22   60929233 v1

23

24   Dated: December 4, 2006

25

26

27

28

UNITED STATES DISTRICT COURT

IT IS SO ORDERED

Judge Joseph C. Spero

NORTHERN DISTRICT OF CALIFORNIA

# EXHIBIT A

1   TOWNSEND AND TOWNSEND AND CREW LLP
    MARC M. GORELNIK (State Bar No. 166833)
2   NANCY L. TOMPKINS (State Bar No. 183623)
    MARY L. SHAPIRO (State Bar No. 201199)
3   Two Embarcadero Center, 8th Floor
    San Francisco, CA 94111
4   Telephone: (415) 576-0200
    Facsimile: (415) 576-0300

5
    *Attorneys for Plaintiff*
6   CSL, L.L.C.

7   SEYFARTH SHAW LLP
    KENNETH L. WILTON (SBN: 126557)
8   2029 Century Park East, Suite 3300
9   Los Angeles, CA 90067-3036
    Telephone: (310) 177-7200
10  Facsimile: (310) 201-5219

11
    *Attorneys for Defendant*
12  IMPERIAL BUILDING PRODUCTS, INC. and
    *Defendant and Counterclaimant*
13  IMPERIAL BRUSH CO., LTD.

14
15                    UNITED STATES DISTRICT COURT

16              FOR THE NORTHERN DISTRICT OF CALIFORNIA

17
18  CSL, L.L.C., a Florida limited liability         Case No. C 03-05566 JCS
    company,
19                  Plaintiff,
                                                     **[PROPOSED] REDACTED ORDER**
20          v.

21  IMPERIAL BUILDING PRODUCTS, INC., a
    company organized under the laws of Canada,
22  and IMPERIAL BRUSH CO., LTD., a
    company organized under the laws of Canada,
23
                    Defendants.
24

25
26
27
28

FILED

2006 NOV 21  PM 1:19

RICHARD W. WICKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CAL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CSL, L.L.C., | No. C-03-5566 JCS |
| Plaintiff(s), | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS [Docket No. 181], STRIKING IMPERIAL'S OCTOBER 13, 2006 SUPPLEMENTAL BRIEF [Docket No. 235] AND DENYING DEFENDANT'S EVIDENTIARY OBJECTIONS AND MOTION TO STRIKE [Docket No. 256]** |
| v. | |
| IMPERIAL BUILDING PRODUCTS, INC., ET AL., | |
| Defendant(s). | |
| _____/ | |

**(FILED UNDER SEAL)**

## I.      INTRODUCTION

Plaintiff CSL, L.L.C. ("CSL") renews its Motion for Contempt Sanctions ("the Motion") following a decision by the Ninth Circuit Court of Appeals reversing in part this Court's decision denying the Motion.  A hearing was held on Friday, September 29, 2006, at 9:30 a.m.  Following the hearing, the Court granted Defendant Imperial Building Products, Inc. ("Imperial") leave to file a supplemental brief in response to "new information" contained in CSL's reply brief.  *See* Docket No. 222 [Minutes, September 29, 2006].  In particular, in its reply brief, CSL offered some new calculations in support of its request for damages based on actual sales figures that Imperial provided, for the first time, in its opposition brief.  CSL was granted leave to file a response to Imperial's supplemental brief.  For the reasons stated below, the Court finds Imperial in contempt and GRANTS in part and DENIES in part CSL's request for sanctions.

## II.     BACKGROUND

Since 2001, CSL has been distributing in the United States fire logs that it claims reduce creosote accumulations in chimneys.  Declaration of Michele Gaborit in Support of CSL's Motion

For the Northern District of California

for Finding of Contempt and Appropriate Sanctions ("Gaborit Decl.") at ¶ 5. In the fiscal year ending June 30, 2004, CSL experienced a "dramatic drop in sales." Declaration of Thomas M. Neches, C.P.A. in Support of CSL's Motion for Finding of Contempt and Appropriate Sanctions ("Neches Decl."), ¶ 5. CSL's expert attributes the drop primarily to two developments: first, Imperial began selling its SUPERSWEEP fire log during that fiscal year; and second, Duraflame released a new fire log, the Flue-Renew log, that also was claimed to reduce creosote. *Id.*

In December 2003, CSL sued Imperial for false advertising and trademark infringement in connection with Imperial's sale of the SUPERSWEEP fire log. The action was settled and a Final Judgment and Injunction ("the Injunction") was entered on April 30, 2004. Under the terms of the Injunction, Imperial is enjoined from: 1) representing that the SUPERSWEEP fire log reduces creosote from chimneys or is a chimney cleaning log ("Paragraph One"); and 2) using the SUPERSWEEP mark on any future fire log product unless it has the "demonstrated capability to remove or reduce creosote in chimneys and/or aid in the loosening and breaking away of creosote deposits" ("Paragraph Two").

In June 2004, CSL, brought a contempt motion against Imperial, asserting it had violated the Injunction by continuing to sell the "SUPERSWEEP" fire log in its original packaging. The Court agreed and imposed monetary sanctions.

In October 2004, CSL brought a second contempt motion (the instant motion), asserting that a new product that Imperial was introducing to the market -- the SUPERSWEEP PLUS fire log -- also violated the terms of the Injunction. The Court denied the motion on April 29, 2005, on the basis that CSL had not established by clear and convincing evidence that Imperial violated either Paragraph One or Paragraph Two of the Injunction.

In an order filed March 15, 2006, the Ninth Circuit reversed this Court's April 29, 2005 Order, holding that Imperial's sale of the SUPERSWEEP PLUS violated Paragraph Two of the Injunction because Imperial has not demonstrated that the new product does what Imperial claims it does, that is, remove creosote from chimneys. The Ninth Circuit explained:

> We construe the words "demonstrated capability" in the context of determining whether Imperial was in compliance with the consent agreement as requiring a showing that the SUPERSWEEP Plus log

For the Northern District of California

1  does what Imperial claims it does – reduce creosote. . . . The evidence
2  does not demonstrate that the SUPERSWEEP Plus log works. . . .We
   hold that Imperial is in violation of [P]aragraph [T]wo of the consent
3  agreement.

4  *CSL, L.L.C. v. Imperial Bldg. Prods., Inc.*, 2006 WL 679891 (9th Cir. Mar. 15, 2006).[1]

5         Following entry of the Ninth Circuit's decision, Imperial continued to ship the

6  SUPERSWEEP PLUS log to "existing clients," shipping 1,056 logs between March 15, 2006 and

7  May 24, 2006. *See* Declaration of Michael Semerak in Support of Defendants' Opposition to Motion

8  for Finding of Contempt and Appropriate Sanctions ("Semerak Decl."), ¶ 19.

9         In an order filed on June 23, 2006 ("the Cease and Desist Order"), this Court enjoined all

10 further "sales, distribution, display and promotion of Imperial's current SUPERSWEEP PLUS fire

11 log product." In the Cease and Desist Order, the Court ordered "that Imperial shall contact in writing

12 all customers, retailers, and distributors to whom Imperial sold the current SUPERSWEEP PLUS

13 product as well as anyone else Imperial reasonably knows has received a shipment of the current

14 SUPERSWEEP PLUS product" to notify them of the Court's order and instruct them to remove all

15 SUPERSWEEP PLUS logs from their shelves. [Docket No. 177]

16 **III.    The Briefs**

17        **A.    CSL's Motion**

18        CSL seeks an order finding Imperial in contempt based on its sale and marketing of the

19 SUPERSWEEP PLUS fire log in violation of the Injunction and imposing compensatory and

20 coercive sanctions. CSL requests the following compensatory sanctions: 1) CSL's lost profits

21 resulting from Imperial's sale of the SUPERSWEEP PLUS; 2) the costs incurred by CSL testing the

22 SUPERSWEEP PLUS to determine whether it complied with the Injunction; and 3) attorneys' fees

23 incurred in connection with the contempt motion, including the appeal. In addition, CSL seeks the

24 following coercive sanctions: 1) an order requiring that Imperial destroy all product packaging,

25 advertising or promotional material containing the SUPERSWEEP term; 2) modification of the

26 _____

27        [1] Although this decision is unpublished, its citation is permitted here under Ninth Circuit Rule
   36-3(b)(i), which permits citation of unpublished decisions "when relevant under the doctrine of law of
28 the case, res judicata, or collateral estoppel."

For the Northern District of California

Injunction to include a provision for coercive sanctions in the event of future violations; and 3) an order requiring that if Imperial seeks to introduce a product bearing the SUPERSWEEP or any similar term, it must first demonstrate to the Court that the product's ability to remove creosote in chimneys.

### 1.   CSL's Calculation of Lost Profits

CSL seeks to recover the profits it asserts it lost as a result of Imperial's sales of the SUPERSWEEP PLUS.[2]  In its opening brief, CSL sought $5,551,493.00 in lost profits – a figure derived by CSL's expert, Thomas Neches, who at that time did not have figures regarding actual sales of the SUPERSWEEP PLUS. *See* Neches Decl. at 3.  Subsequently, Imperial provided CSL with actual sales figures, resulting in a reduction of the lost profits sought by CSL to $1,548,320.00. *See* Supplemental Declaration of Thomas M. Neches, CPA in Support of Finding of Contempt and Appropriate Sanctions ("Neches Supp. Decl.") at 3.   For the purposes of calculating lost profits, CSL divided its United States customers into three categories: 1) Lowe's Companies, Inc. ("Lowe's"); 2) Ace Hardware Corporation ("Ace Hardware"); and 3) all Other Customers.  Neches Decl. at 3.  After Imperial provided its actual sales figures, CSL revised its calculations for Ace Hardware and its Other Customers but did not revise its calculation for Lowe's.  CSL's calculations regarding its alleged lost profits are described below.

#### a.   Lowe's

Lowe's began carrying CSL's fire log in 2003 and continued to carry it exclusively until July 2005. Neches Decl., ¶ 8 & Ex. G.  In July 2005 (fiscal 2006),[3] Lowe's stopped selling CSL's fire log altogether and began selling the SUPERWEEP PLUS. *Id.* Lowe's did not carry the Duraflame fire log, either before or after July 2005. *Id.*

To calculate lost profits for Lowe's, CSL began by quantifying its sales for fiscal years 2003 through 2006.  These figures reflect that CSL's sales to Lowe's in 2003 were ▮▮▮▮ units.  In 2004,

---

[2] In this Motion, CSL *does not* seek lost profits resulting from Imperial's sale of the original SUPERSWEEP fire log.

[3] Hereinafter, all references to years refer to fiscal years, which run from July 1 of the previous year to June 30 of the current year.

For the Northern District of California

1  these sales dropped by 1.5% to ▮▮▮▮ units.  Neches Decl., Ex. E.  This was the period in which

2  the SUPERSWEEP and Flue-Renew products were introduced to the market, although neither

3  product was sold at Lowe's.  In 2005, CSL's sales to Lowe's increased by 11.4%, to ▮▮▮▮ *Id.*

4       CSL projects that if Lowe's had not replaced CSL's product with the SUPERSWEEP PLUS

5  in fiscal 2006, CSL was on a track to sell ▮▮▮▮ fire logs to Lowe's that year.  *Id.*, Ex. G.  This

6  figure is referred to as CSL's "but-for" sales to Lowe's.  Neches apparently derived this figure by

7  assuming a rate of growth in sales to Lowe's of 16% in 2003 (although CSL actually had no growth

8  in sales to Lowe's in 2003 because it had not sold any logs to Lowe's in the previous year) and then

9  assuming for each subsequent year that growth was half the rate of the previous year.  *Id.* at ¶ 10 &

10  Ex. G.  The 16% growth rate used for Lowe's for 2003 was apparently based on the actual growth in

11  sales to Ace Hardware in 2003.[4]  Using this approach, Neches found a "but-for" growth rate for 2006

12  of 4.3% based on a comparison of CSL's actual 2005 sales with the but-for sales estimate for 2006.

13  Supplemental Declaration of Thomas M. Neches, CPA in Support of Finding of Contempt and

14  Appropriate Sanctions ("Neches Supp. Decl.") at 7.  Neches asserts that this is a reasonable, and

15  even conservative estimate of but-for growth, pointing out that: 1) 4.3% growth is less than half the

16  rate of growth experience by CSL in its sales to Lowe's the previous year; 2) it is a lower rate of

17  growth than CSL experienced in its sales to Ace Hardware and its Other Customers in 2006 (10.7%

18  and 10.6%, respectively); and 3) it is substantially less than the ▮▮▮ SUPERSWEEP PLUS fire

19  logs that were *actually* sold by Imperial to Lowe's in 2006.  *Id.* at 8-9.

20       With respect to Imperial's actual 2006 sales to Lowe's, CSL's expert explains that this

21  number is higher than the projected but-for sales for CSL because Imperial sold its fire log at a

22  slightly lower price than CSL – $9.99 rather than $14.99.  Thus, CSL would be expected to "capture"

23  only a portion of the sales of SUPERSWEEP PLUS logs actually made by Imperial.  *Id.* at 8. ▮▮▮

24  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27      [4] Neches does not explain in his declaration how he derived the baseline but-for growth rate used
28  for Lowe's for 2003, which also is not shown in Exhibit G.

1

2

3     As the final step, CSL multiplies its but-for projected sales to Lowe's for 2006 ▆▆▆▆ by

4  the amount of incremental profit made on each unit sold to Lowe's.  Neches Decl. at 3 & Exs. F

5  (reflecting incremental lost profit) & G (showing calculation).  According to CSL, the incremental

6  profit per unit for Lowe's in 2006 was $▆▆▆ *Id.*, Ex. F.  Using this method of calculation, the lost

7  profit for Lowe's for 2006 was $1,136,633.00.  *Id.*, Ex. G.

8              **b.**      **Ace Hardware**

9     Ace Hardware began selling CSL's fire log in 2002.  *Id.*, Ex. G.  Ace Hardware introduced

10  both the SUPERSWEEP and the Duraflame fire log sometime after July 2003 but continued to sell

11  CSL's fire log as well.  *Id.* at 3-4, ¶ 8.  In September 2004, Ace Hardware began selling the

12  SUPERSWEEP PLUS instead of the SUPERSWEEP and continued to sell CSL's fire logs and

13  Duraflame's Flue-Renew.  *Id.*  Neches was able to provide a calculation of lost sales based on the

14  actual sales figures for the SUPERSWEEP PLUS, which were provided by Imperial with its

15  Opposition brief.  The calculation is as follows.

16     In fiscal 2005 and 2006, Ace Hardware was selling CSL's fire log, the SUPERSWEEP PLUS

17  and Duraflame's Flue-Renew.  Neches Decl. at 3-4, ¶ 8.  In 2005, CSL sold ▆▆▆▆ fire logs to Ace

18  Hardware, while Imperial sold ▆▆▆▆ SUPERSWEEP PLUS fire logs.  Neches Supp. Decl., Ex. I-2.

19  In 2006, CSL sold ▆▆▆ fire logs to Ace Hardware, while Imperial sold ▆▆▆ SUPERSWEEP

20  PLUS fire logs.  *Id.*  For each of those years, CSL asserts, CSL would have captured some of

21  Imperial's sales if the SUPERSWEEP PLUS had not been on the market.  Noting that the price

22  differential at Ace Hardware is less significant than it is at Lowe's ($12.99 versus $14.99 at Ace

23  Hardware, rather than $9.99 versus $14.99 at Lowe's), Neches concludes that the capture rate at Ace

24  Hardware is ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

25  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  *Id.*  Neches notes that this rate is lower than the rate he would

26  have obtained using the relative prices of the two logs at Ace Hardware, which would have given rise

27  to a capture rate ▆▆▆▆▆  *Id.*

28

For the Northern District of California

For the Northern District of California

1  ██████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████ This gives rise to calculated lost

5  profits of $401,358.00 due to Imperial's sale of SUPERSWEEP PLUS fire logs to Ace Hardware.

              **c.**      **Other Vendors**

In 2002, CSL sold ██████ fire logs to its Other Customers. *Id.* at 9 & Ex. I-3. In 2003, CSL sold ██████ fire logs to Other Customers. *Id*, Ex. I-3. In 2004, the number of sales by CSL to Other Customers dropped very significantly, to ██████ *Id.* In its original calculation, CSL's expert assumed that half of these lost sales were attributable to Imperial's sale of the original SUPERSWEEP fire log, but the actual sales figures subsequently provided by Imperial show that in 2004, Imperial sold only ██████ fire logs to CSL's Other Customers. *Id.* Thus, most of drop in sales in 2004 apparently is attributable to release of Duraflame's Flue-Renew. *Id.*

In 2005, Imperial sold ██████ fire logs to CSL's Other Customers and in 2006, Imperial sold ██████ fire logs to CSL's other customers. *Id.* CSL's expert estimated that the capture rate for the Other Customers would have been the same as for Ace Hardware, ██████████ *Id.* Using this rate, he then calculated that CSL would have sold ██████████ logs in 2005 and ██████████ logs in 2006. *Id.* He then multiplied these "but for" additional sales by the incremental profit for 2005 and 2006, ██████████ respectively. *Id.*, Ex. H & I-3. This gives rise to lost profit of $10,329.00 for the Other Customers. *Id.*

          **2.**      **Costs of Testing**

CSL seeks $32,420.00 in costs incurred testing the SUPERSWEEP PLUS to determine whether it reduces creosote accumulations in chimneys. *See* Declaration of Michael Hirsch in Support of CSL's Motion for Finding of Contempt and Appropriate Sanctions ("Hirsch Decl."), ¶ 23. In support of this request, CSL presents evidence that Imperial refused to provide its own test results to CSL when requested to do so. *Id.* CSL also provides invoices from Omni Environmental Services, Inc., which was hired to conduct the testing, in support of the amount sought. *Id.*, Ex. F (invoices for testing).

For the Northern District of California

3.     **Attorneys' Fees and Costs**

CSL seeks $357,178.63 in attorneys' fees and costs, which includes $341,402.83 in attorneys' fees and $15,775.80 in costs.  *See* Declaration of Marc M. Gorelnik in Support of CSL's Motion for Finding of Contempt and Appropriate Sanctions ("Gorelnik Decl.").  CSL has provided detailed billing statements documenting its attorneys' fees and costs.  *Id.*, Exs. F, G, H & I.

4.     **Destruction of SUPERSWEEP Packaging**

CSL asserts that Imperial should be ordered to "turn over any and all 'SUPERSWEEP' or 'SUPERSWEEP PLUS' packaging, promotional and sales material for destruction by a third party, who will certify the fact and quantity of material destroyed."  According to CSL, this is a well-established remedy in the field of trademark law and is particularly appropriate here, where Imperial was already found in contempt for shipping SUPERSWEEP logs after the Injunction was entered.  CSL cites to the Lanham Act, 15 U.S.C. § 1118, which authorizes courts to order the destruction of packaging and advertising in the possession of the defendant that bears the trademark of the plaintiff in trademark infringement actions.

5.     **Coercive Sanctions for Future Violations**

CSL asserts that in light of Imperial's history of non-compliance, the Injunction should be modified to include a coercive monetary sanction, payable to the Court.  CSL calculates the amount of the sanction sought based on its alleged damages over the last two years, which it asserted in the motion were $7,945 for each day in which Imperial was in contempt.

6.     **Prior Court Approval for Future Products Using SUPERSWEEP Term**

CSL also asks that the Court require Imperial to obtain its approval approval *before* launching any new product bearing the SUPERSWEEP term or any derivative of that term.  CSL argues that such a requirement is appropriate given Imperial's pattern of non-compliance and the financial burden to CSL that results from the lengthy process of litigating contempt motions.

B.     **Imperial's Opposition**

Imperial asserts that even though it is in contempt, its conduct does "not warrant the draconian sanctions requested by CSL" because it believed it was complying with the Injunction based on this Court's April 29, 2005 decision.  Further, Imperial asserts that the imposition of

1    sanctions is inappropriate because it ceased selling the SUPERSWEEP PLUS once the Ninth Circuit

2    reversed this Court's decision.  Imperial responds as follows to the specific relief sought by CSL.

### 1.    Lost Profits

4    Imperial asserts that CSL's calculation of lost profits is flawed in several respects.  First,

5    Imperial asserts that CSL fails to take into account that if Imperial had not sold the SUPERSWEEP

6    PLUS, it would have sold a fire log with different packaging that did not use the SUPERSWEEP

7    term.  In that case, Imperial asserts, many of the sales CSL claims it lost because of Imperial's

8    conduct would have been lost in any event and therefore cannot be considered to have been caused

9    by its violation of the Injunction.  Second, Imperial argues that CSL's expert erred because he used

10   the 2003 growth rate as a baseline for computing but-for sales rather than the growth rate in 2004,

11   when the SUPERSWEEP PLUS was introduced to the market.  Third, Imperial asserts that CSL

12   should not be awarded lost profits based on lost sales to Lowe's in 2006 because CSL has not shown

13   that it tried to sell its fire logs to Lowe's in that year.  On a related note, Imperial points to evidence

14   that Lowe's chose to sell Imperial's product in part because it was one in a line of products –

15   something CLS apparently did not offer.   Finally, Imperial provides its actual sales figures for the

16   period in dispute.  These figures show that CSL's expert, in his original declaration in support of the

17   Motion, overestimated the extent to which CSL's losses were attributable to the SUPERSWEEP

18   PLUS and underestimated the extent to which its losses were attributable to Duraflame's Flue-

19   Renew in calculating its losses for Ace Hardware and its Other Customers.

### 2.    Cost of Testing

21   In its Opposition brief, Imperial does not specifically oppose CSL's request for an award of

22   the costs of testing the SUPERSWEEP PLUS.

### 3.    Attorneys' Fees and Costs

24   With respect to CSL's request for attorneys' fees, Imperial does not challenge any specific

25   items but argues that the award, if any, should be reduced in light of CSL's results.  In addition,

26   Imperial asserts that CSL is not entitled to attorneys' fees incurred on appeal, which may only be

27   awarded by the court of appeals.

28

For the Northern District of California

### 4.    Coercive Monetary Sanctions

Imperial asserts that coercive monetary sanctions are unnecessary because it immediately stopped selling the SUPERSWEEP PLUS after the Ninth Circuit held that sale of this product violated the injunction.

### 5.    Destruction of SUPERSWEEP Packaging

Imperial asserts that because it "took the necessary steps to stop all use of the SUPERSWEEP mark" "immediately after" the Ninth Circuit's decision, CSL's request for destruction of packaging and advertising materials bearing the SUPERSWEEP mark is moot.

### 6.    Prior Court Approval for Future Products Using SUPERSWEEP Term

Similarly, Imperial asserts that CSL's request that Imperial be required to obtain Court approval before introducing any future product using the SUPERSWEEP mark is "moot" because Imperial immediately stopped selling the product after the Ninth Circuit entered its order.

### C.    CSL's Reply

In its Reply, CSL disputes Imperial's representations that it took all reasonable steps to comply with the Injunction, pointing out that Imperial shipped over 1,000 SUPERSWEEP PLUS logs, over the course of many weeks, after the Ninth Circuit ruled that Imperial's sale of the SUPERSWEEP PLUS violated the Injunction.  CSL further asserts that Imperial has failed to take reasonable steps to stop the sale of the  SUPERSWEEP PLUS by retailers – and particularly, Ace Hardware stores –  after entry of the Cease and Desist Order.  In support of this point, CSL presents evidence that  Imperial failed to contact individual Ace Hardware stores to notify them of the Cease and Desist Order as it promised the Court it would and that, as a result, many Ace Hardware stores were still selling the SUPERSWEEP PLUS at the time of CSL's Reply brief, in September 2006.

As discussed above, CSL offers in its Reply new calculations of lost profit for Ace Hardware and its Other Customers using Imperial's actual sales figures, which Imperial provided for the first time in its Opposition brief.   CSL rejects Imperial's assertion that in calculating lost profit, the Court should take into account that Imperial would have sold the same product under a different name if it had not marketed its product as the SUPERSWEEP PLUS.  CSL asserts that Imperial has improperly imported concepts from patent law into a trademark context and cites case law that distinguishes

For the Northern District of California

between these two bodies of law.  CSL also presents evidence that it did attempt to sell its product to Lowe's hardware for the 2006 fiscal year.  *See* Declaration of Melinda Anderson in Support of Finding of Contempt and Appropriate Sanctions ("Anderson Decl.").

CSL disagrees that its attorneys' fees should be reduced on the basis that it has not been completely successful on the Motion.  CSL does not address, however, Imperial's assertion that CSL may not recover the attorneys' fees it incurred on appeal.

### D.    Imperial's September 27, 2006 Declarations

On September 27, 2006, just two days before the hearing on the Motion, Imperial filed additional declarations addressing the reasonableness of its actions with respect to notifying retailers of the requirements under the Cease and Desist Order.

### E.    The Hearing

At the hearing, on September 29, 2006, CSL notified the Court that Ace Hardware was planning to release a nationwide advertising supplement featuring the SUPERSWEEP PLUS on October 1, 2006.  CSL further notified the Court that it intended to file a new contempt motion based on Imperial's alleged violations of the Cease and Desist Order.  At the conclusion of the hearing, the Court permitted Imperial to file a supplemental brief addressing the new calculations in the Supplemental Neches Declaration and CSL to file a response to Imperial's supplemental brief.

### F.    Post-Hearing Briefs

On October 13, 2006, Imperial filed a supplemental brief.  In it, Imperial makes the following arguments: 1) CSL has failed to explain the connections between the various entities that market its product and therefore has not established that *CSL*, rather than the entities named on the various invoices provided as evidence of damages, has sustained any lost profits; 2) the calculation of lost profits for Lowe's is incorrect because CSL's expert failed to take into account various Lowe's-specific expenses CSL would have incurred that would have cut into incremental profit; 3) CSL's expert should have considered whether the use of the SUPERSWEEP mark – rather than the sale of the product itself – caused it any damage; and 4) to the extent that CSL's expert relies on the "capture rate" for Lowe's to corroborate its estimate of lost sales for 2006, that methodology is arbitrary and speculative.

For the Northern District of California

1    CSL filed a response to Imperial's supplemental brief on October 27, 2006.  In it, CSL argues

2    that Imperial's supplemental brief should be stricken because it does not address the new information

3    contained in CSL's Reply declarations and brief, namely, the new calculations of lost profits for Ace

4    Hardware and the Other Customers that use Imperial's actual sales figures.  Instead, CSL asserts,

5    Imperial has repeated its earlier arguments and made new arguments that should have been raised in

6    its Opposition brief.  CSL went on to reject Imperial's arguments on the merits.

7         On November 8, 2006, Imperial filed Evidentiary Objections and Motion to Strike Portions

8    of Declarations of Michael Hirsch and Declaration of Michele Gaborit filed by CSL, L.L.C. in

9    Support of Motion for Sanctions ("Imperial Motion to Strike").  In its motion to strike, Imperial asks

10   the Court  to strike paragraph 4 of the July 21, 2006 Hirsch Declaration, paragraph 5 of the July 20,

11   2006 Gaborit Declaration and paragraphs 3 and 4 of the October 27, 2006 Supplemental Hirsch

12   Declaration on the ground that all of these purport to establish the existence of an agreement between

13   the various entities that market and sell Imperial's log while CSL has failed to introduce into

14   evidence the best evidence of this relationship – the agreement itself.

15        On November 13, 2006, CSL filed an Opposition to Defendant Imperial's Evidentiary

16   Objections and Motion to Strike.  In it, CSL asserts that Imperial's Motion to Strike is untimely to

17   the extent Imperial objects to declarations filed before the September 29, 2006 hearing because

18   Imperial did not object to this evidence prior to or at that hearing.  CSL further asserts that the

19   objections lack merit because the declarations to which Imperial objects do not seek to prove the

20   content of the agreement between CSL and the other entities but merely its import.  Finally, CSL

21   provides a copy of the agreement to support the assertions made in the declarations to which Imperial

22   objects.

23   **IV.    ANALYSIS**

24        **A.    Imperial's Supplemental Brief and the Imperial Motion to Strike**

25        As a preliminary matter, the Court addresses CSL's assertion that the arguments raised in

26   Imperial's October 13, 2006 supplemental brief were improper and should not be considered.  The

27   Court agrees.  All of the arguments made by Imperial in its supplemental brief were based on

28   evidence provided by CSL in support of the Motion and should have been raised in Imperial's

1  Opposition brief. They were not. Nor were any of these issues raised at oral argument. Moreover,

2  Imperial's arguments in its supplemental brief have nothing to do with the *new* information in the

3  Neches Declaration.

4          As is evident from the minutes and transcript of the September 27, 2006 hearing, Imperial

5  was permitted to file a supplemental brief to address the new calculations offered by CSL in support

6  of its Reply brief, *not* to repeat arguments it had already made or raise new arguments that could

7  have been raised in its Opposition. Accordingly, the Court declines to consider the October 13, 2006

8  brief, which is stricken from the record pursuant to Rule 12(f) of the Federal Rules of Civil

9  Procedure.[5]

10         Further, the Court denies Imperials Motion to Strike. First, the Motion to Strike is without

11 merit because the Court has determined that Imperial's new arguments, including its arguments

12 regarding CSL's relationship with the entities that marketed and sold CSL's fire log in the United

13 States, are improper and will not be considered. Second, the objections are untimely to the extent

14 they address declarations that were filed long before the hearing. *See FDIC v. New Hampshire Ins.*

15 *Co.*, 953 F.2d 478, 484 (9th Cir. 1991). Third, the objections lack merit because CSL offers the

16 declarations to show that it was paid for the logs sold on its behalf by the entities – not to prove the

17 content of the agreement. *See R & R Assocs., Inc. v. Visual Scene, Inc.*, 726 F.2d 36, 38 (1st Cir.

18 1984).

19

20 _____

21 [5] Even if the Court were to consider Imperial's new arguments, its result would be the same.
First, the questions raised by Imperial regarding the relationship between the various entities that market
and distribute CSL's fire log are adequately addressed in the Supplemental Declaration of Michael
22 Hirsch in Support of Plaintiff CSL's Supplemental Reply in Support of Findings of Contempt and
Appropriate Sanctions ("Hirsch Supp. Decl."), ¶¶ 3-5. Second, the Court finds the explanation of
23 Thomas Neches regarding his calculation of incremental profits for Lowe's to be persuasive. *See* Second
Supplemental Declaration of Thomas M. Neches CPA in Support of Plaintiff CSL's Supplemental Reply
24 in Support of Findings of Contempt and Appropriate Sanctions ("Second Supp. Neches Decl."), ¶¶ 4-5.
Third, Imperial's assertion that Neches should have considered whether the use of the SUPERSWEEP
25 mark – as opposed to the sale of the product – resulted in lost profits is simply a another way of stating
Imperial's argument that principles of patent law should be applied in determining lost profits. For the
26 reasons stated below, the Court rejects that proposition. Moreover, the Injunction barred the sale of
product – a prohibition that was violated. CSL is therefore entitled to damages arising out of the sale
27 of the prohibited product. Fourth, to the extent Imperial questions the validity of the "capture rate" cited
by Neches in support of his calculation of lost profits for Lowe's, the Court does not rely on that capture
28 rate.

**B.  Contempt Finding**

A party is in civil contempt where it disobeys a "specific and definite court order" by failing to "take all reasonable steps within the party's power to comply." *Go-Video v. Motion Picture Ass'n of Am. (In re Dual Deck)*, 10 F.3d 693, 695 (9th Cir. 1993). "There is no good faith exception to the requirement of compliance with a court order." *Id.* However, a party will not be held in contempt where its actions were based on a "good faith and reasonable interpretation" of the order. *Id.* Nor will a party be held in contempt based on "a few technical violations where every reasonable effort has been made to comply." *Id.* "Congress has determined that the power to hold a party in contempt is a discretionary power vested in the court whose order has been violated." *Crystal Palace v. Mark Twain*, 817 F.2d 1361, 1364 (9th Cir. 1987).

Imperial is in contempt of the Injunction. The Ninth Circuit held that Imperial violated Paragraph Two of the Consent Decree but did not expressly rule that Imperial was in contempt. Rather, it left open the possibility that this Court might find that Imperial took all reasonable steps to comply with the court's order and therefore, is not in contempt. This Court declines to make such a finding. Imperial could easily have removed the SUPERSWEEP PLUS name from its current product (as it has now done) to avoid violating the injunction. Indeed, Imperial has asserted in its briefs that it could have sold just as many logs if it had used different packaging as it did when it was using the SUPERSWEEP PLUS packaging. Further, while Imperial has emphasized its reliance on this Court's finding that its sale of the SUPERSWEEP PLUS did not violate the Injunction, it is unable to explain why it continued to ship its product to existing customers for many weeks after the Ninth Circuit's decision holding that sale of the product violated the Injunction. Nor is the violation of Paragraph Two merely technical. Finally, Imperial conceded at the hearing that it does not contest that it is in contempt, but rather challenges only the imposition of sanctions. Therefore, the Court finds Imperial in contempt.

**C.  Appropriate Sanctions**

"Civil contempt is characterized by the court's desire to compel obedience to a court order . . . or to compensate the contemnor's adversaries for the injuries which result from the non-compliance." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983)

1  (citations omitted). To the extent a sanction is intended to be compensatory, it must be based on "the

2  actual losses sustained as a result of the contumacy." *Shuffler v. Heritage Bank,* 720 F.2d 1141,

3  1148 (9th Cir. 1983). Difficulty in quantifying damages does not bar recovery. *Simpson v. Union*

4  *Oil Co. of Cal.*, 396 U.S. 13, 16 (1969). Rather, the wrongdoer bears the "risk of the uncertainty

5  which his own wrong has created." *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 265 (1946).

6  On the other hand, damages may not be based on "speculation or guesswork." *Id.* at 264. District

7  courts have "broad equitable power to order appropriate relief in civil contempt proceedings."

8  *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).

9          **1.**      **Compensatory Sanctions**

10            **a.**     **Lost Profits**

11        Imperial stipulated at oral argument that CSL's lost profits are an appropriate measure of

12  damages. It argues, however, that CSL's methodology is flawed and that in fact, the evidence shows

13  that its sale of the SUPERSWEEP PLUS did not result in *any* lost profits on the part of CSL. For the

14  reasons stated below, the Court concludes that Imperial's sale of the SUPERSWEEP PLUS resulted

15  in lost profits to CSL in the amount of $1,136,633.00.

16        As a preliminary matter, the Court rejects Imperial's assertion that CSL's calculation of but-

17  for sales is flawed because it fails to consider that if Imperial had not sold the SUPERSWEEP PLUS,

18  it would have sold a fire log with different packaging that did not use the SUPERSWEEP term. In

19  that case, Imperial asserts, many (if not all) of the sales CSL claims it lost because of Imperial's

20  conduct would have been lost in any event but would not have been caused by Imperial's sale of the

21  SUPERSWEEP PLUS.

22        Imperial's argument is based on the approach that is applied in patent cases for determining

23  lost profits, which requires that a patent owner seeking lost profits establish: 1) a demand for its

24  product; 2) the absence of non-infringing substitutes; 3) manufacturing and marketing capability to

25  exploit that demand; and 4) the amount of profits it would have made. Opposition at 8 (citing *Grain*

26  *Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999)). In *Grain*

27  *Processing*, the court held that the plaintiff in a patent infringement action could not recover lost

28

For the Northern District of California

For the Northern District of California

1    profits because there was evidence that a non-infringing alterative existed and would have been

2    acceptable to consumers. *Id.* at 1355.

3           The approach taken in patent cases does not extend beyond that context to cases grounded in

4    trademark or unfair competition law – particularly where the question is one of remedy for violation

5    of a court order. As CSL notes, many courts have pointed to the difference between the two bodies

6    of law and particularly, the fact that in the area of trademark and unfair competition law, there is

7    virtually an infinite number of non-infringing alternatives. *See* Reply at 13 (citing *W.T. Rogers Co.,*

8    *Inc. v. Keene*, 778 F.2d 334, 339 (7th Cir. 1985)). As a result, it would be almost impossible for a

9    plaintiff in a trademark action to establish actual damages in the form of its own lost profits if the

10   approach used in patent cases were extended to trademark infringement actions. Yet lost profits are

11   a standard form of damages in such actions. *See, e.g., Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982

12   F.2d 1400, 1407 (9th Cir. 1993) (in trademark infringement actions "[d]amages are typically

13   measured by any direct injury which a plaintiff can prove, as well as any lost profits which the

14   plaintiff would have earned but for the infringement"). Nor does the Court find any trademark

15   infringement or unfair competition case in which courts have considered the availability of non-

16   infringing alternatives in calculating a plaintiff's actual loss.[6] In any event, in the context of a

17   contempt proceeding, it is particularly inappropriate for the Court to reduce lost profits on the basis

18   that there would have been none had Imperial complied with the Injunction. In light of the Court's

19   broad authority to fashion an appropriate remedy in contempt proceedings, the Court declines to

20   adopt such a rule. Therefore, the Court rejects Imperial's reliance on patent law.

21          Turning to the calculations of lost profit offered by CSL, the Court agrees with CSL's

22   calculation of lost profits of $1,136,633.00 caused by Imperial's sales to Lowe's. First, CSL has

23   offered sufficient evidence to establish causation. CSL presented evidence that Lowe's carried

24

25          [6] The Court is mindful that its determination of damages is guided by the rules governing civil
26   contempt sanctions rather than the trademark and unfair competition law on which some of CSL's
     underlying claims were based. Nonetheless, the Court may reasonably look to trademark law in
27   fashioning an appropriate civil contempt sanction. *See Howard Johnson Co., Inc. v. Khimani*, 892 F.2d
     1512, 1519 (11th Cir. 1990) (holding that district court acted reasonably and within its discretion in
28   looking to trademark law in determining civil contempt sanctions).

For the Northern District of California

1   CSL's product exclusively for the three years leading up to 2006 and that CSL attempted to sell its

2   product to Lowe's in 2006.  *See* Declaration of Melinda Anderson in Support of Finding of

3   Contempt and Appropriate Sanctions ("Anderson Decl."), ¶¶ 6-9 & Exs. A, B (documenting CSL's

4   efforts to sell its product to Lowe's for the 2006 selling season, including a line review meeting).

5   Instead, Lowe's chose to replace CSL's fire log with Imperial's in 2006.  While Lowe's *may* have

6   chosen Imperial's product in part because Imperial offered a line of products, CSL's evidence is

7   sufficient to show that if Imperial had not offered the SUPERSWEEP PLUS as one of those

8   products, Lowe's would have continued to carry CSL's product.

9        Second, the Court finds that $1,136,633.00 in lost profits from sales to Lowe's was caused by

10  Imperial's violation of the Injunction.  While the use of a baseline 2003 growth rate of 16% for the

11  Lowe's calculation is questionable given that it is not based on actual growth in sales to Lowe's for a

12  particular period but instead appears to be based on growth in sales to Ace hardware, the Court

13  concludes that CSL's but-for sales projection for 2006 is reasonable nonetheless.  First, looking only

14  to the year prior to introduction of the SUPERSWEEP PLUS at Lowe's (fiscal 2004), and comparing

15  it to sales in fiscal 2005, CSL's actual growth in sales for 2005 is 11.4% (sales increased from

16  ███████████████ between 2004 and 2005).  Applying the assumption that growth each year is half

17  that of the previous year, which Imperial has not challenged, but-for growth in 2006 would have

18  been 5.5%.  Applying this rate to the actual sales to Lowe's for 2005 gives rise to but-for sales in

19  2006 of ██████ fire logs, that is, *more* than CSL's expert projected using his methodology.

20       Also, as noted by Neches in his supplemental declaration, the 4.3% but-for growth rate for

21  2006 is reasonable in light of the higher growth rates actually experienced by CSL as to Ace

22  Hardware and Other Customers (over 10% each) in the same year and in light of Imperial's actual

23  sales to Lowe's of almost ██████ fire logs.

24       On the other hand, the Court concludes that the calculation used by CSL for Ace Hardware

25  and the Other Customers is too speculative to support an award of damages.  In particular, the Court

26  finds the "capture rate" used to estimate how many sales would have gone to CSL if Imperial's

27  product had not been on the market to be arbitrary.  Although the capture rate ████████████████

28  █████████████████████████████████████████ that rate fails to address the impact that Duraflame's

1   product would have had on CSL's sales if the SUPERSWEEP PLUS had not been on the market.

2                    **b.    Costs of Testing**

3          CSL seeks $32,420.00 in costs incurred testing the SUPERSWEEP PLUS and presents

4   evidence that Imperial refused CSL's requests for Imperial's own test results. *See* Declaration of

5   Michael Hirsch in Support of CSL's Motion for Finding of Contempt and Appropriate Sanctions

6   ("Hirsch Decl."), ¶ 23 & Ex. F (invoices for testing). These costs were necessarily incurred to

7   determine whether Imperial's sale of the SUPERSWEEP PLUS was in compliance with the

8   Injunction. Moreover, Imperial does not contest these costs in its Opposition. Therefore, these costs

9   are awarded in full.

10                   **c.    Attorneys' Fees**

11         CSL seeks $357,178.63 in attorneys' fees, which includes the fees incurred in this Court and

12  on appeal in connection with its contempt motion. Imperial asserts that this request should be

13  reduced on two grounds: 1) this Court is not authorized to award fees incurred on appeal; rather,

14  CSL should have made its request for fees on appeal in the Ninth Circuit; and 2) the award should be

15  substantially reduced because CSL has accomplished very little with its contempt motion. With

16  respect to the first assertion, Imperial argues that the fee request must be reduced by $239,245.00.

17  Imperial does not point to any specific item or amount that should be eliminated in connection with

18  the second argument. In its Reply, CSL does not address the question of whether this Court is

19  authorized to award fees for the appeal. Nor does CSL challenge Imperial's assertion that fees for

20  the appeal account for $239,245.00 of CSL's total request.[7] CLS argues, however, that its fees are

21  reasonable. The Court concludes that it may not award the fees incurred on appeal but that

22  otherwise, CSL's fees are reasonable.

23         In fashioning civil contempt sanctions, the court has the discretion to award reasonable fees

24  and costs as a remedial measure, regardless of whether the party that is in contempt acted wilfully.

25  *Perry v. O'Donnell*, 759 F.2d 702, 704-705 (9th Cir. 1985). The starting point for determining

26

27  _____

28         [7]At the hearing, CSL stipulated that it is not entitled to an award by this Court of its fees incurred on appeal.

                                        18

For the Northern District of California

For the Northern District of California

1   reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of

2   hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah*

3   *County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). A

4   reduced fee award may be appropriate where a plaintiff achieves only partial or limited success.

5   *Hensley*, 461 U.S. at 436. A party seeking fees incurred on appeal must apply for those fees with the

6   court of appeals. *See* Ninth Circuit Rule 39-1.6 (governing requests for fees on appeal). Although

7   the court of appeals may delegate the fee request to the district court, the district court may not award

8   fees for an appeal where the court of appeals has not delegated to it that authority. *Cummings v.*

9   *Connell*, 402 F.3d 936, 947-948 (9th Cir. 2005).

10       Here, the Court concludes that an award of fees is necessary to provide CSL an adequate

11   remedy for Imperial's violation of the Injunction. Further, in light of this Court's ruling that Imperial

12   is in contempt and the significant monetary sanctions it finds CSL is entitled to, no reduction of the

13   lodestar amount is warranted based on CSL's results. The Court does, however, decline to award

14   CSL's fees for the appeal, thus reducing the total fee award to $117,933.63.

15       Finally, the Court has reviewed the time sheets and declarations provided in support of CSL's

16   Motion and finds both the time incurred and rates sought to be reasonable. For this reason, and in

17   light of Imperial's failure to object to any specific time entry, the Court awards $117,933.63 in

18   attorneys' fees.

19              **2.    Coercive Sanctions**

20       In addition to compensatory sanctions, CSL asserts that coercive sanctions are necessary to

21   ensure future compliance with the terms of the injunction. In support of this request, CSL points to

22   evidence that Imperial has failed to take reasonable steps to comply with this Court's Cease and

23   Desist Order. In particular, CSL points to the undisputed fact that at the time the Motion was filed

24   (and even on the date of the hearing) Imperial had not yet contacted the individual Ace Hardware

25   stores directly to recall the product. CSL also argues that Imperial could easily have done so using

26   Ace Hardware's vendor website. Consequently, as of the date of the hearing, many Ace Hardware

27   stores still had the SUPERSWEEP PLUS fire logs on their shelves. *See* Declaration of Lisa Coen in

28   Support of Finding of Contempt and Appropriate Sanctions ("Coen Decl."), ¶¶ 4-8 (investigator

For the Northern District of California

1   visited four Ace Hardware stores in Colorado on September 6, 2006, and found SUPERSWEEP

2   PLUS being sold at two of them); Declaration of Jim Ellis in Support of Finding of Contempt and

3   Appropriate Sanctions ("Ellis Decl."), ¶¶ 4-11 (investigator visited six Ace Hardware stores in

4   Portland, Oregon, on September 7, 2006, and found SUPERSWEEP PLUS being sold at four of

5   them); Supplemental Declaration of Marc M. Gorelnik in Support of Finding of Contempt and

6   Appropriate Sanctions ("Gorelnik Supp. Decl."), ¶ 4 (Gorelnik visited Ace Hardware in El Cerrito,

7   California, on September 1, 2006, and found SUPERSWEEP PLUS fire log being sold there).  CSL

8   also points out that Imperial has now violated the Injunction twice and that the second violation

9   could have been avoided by simply developing new packaging that did not use the SUPERSWEEP

10   term – something that was done fairly quickly after the June 23, 2006 Injunction was entered.

11          "[W]here the purpose [of sanctions for civil contempt] is to make the defendant comply, the

12   court's discretion is . . . exercised.  It must . . . consider the character and magnitude of the harm

13   threatened by continued contumacy, and the probable effectiveness of any suggested sanction in

14   bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304

15   (1947).  The Court concludes that in light of Imperial's repeated violation of the Injunction, coercive

16   sanctions are appropriate.  First, Imperial shall be required to destroy all SUPERSWEEP PLUS

17   packaging – a remedy that is common in cases involving trademark infringement.  *See* 15 U.S.C.

18   § 1118.  Such a remedy is particularly appropriate here, where Imperial previously violated the

19   Injunction by selling the original SUPERSWEEP logs after agreeing not to do so.  The Court notes

20   that Imperial has not objected to CSL's request that the SUPERSWEEP PLUS packaging be

21   destroyed.

22          Second, the Court concludes that any future fire log that Imperial seeks to sell using the

23   SUPERSWEEP or any similar term, must obtain prior approval by the Court.  This sanction is

24   appropriate because Imperial has violated the Injunction twice already.  Given the financial burden

25   on CSL of being forced to engage in lengthy litigation to ensure compliance, and in light of

26   Imperial's past history, such a measure is necessary to effectuate the terms of the Injunction.

27          The Court declines, however, to impose coercive monetary sanctions.  Imperial is already

28   being subjected to significant compensatory sanctions.  The Court is not persuaded that the coercive

For the Northern District of California

1  sanction CSL would like to impose for future violations would provide any more of a deterrent than

2  already exists due to the potential for large compensatory sanctions.  In addition, the Court finds that

3  the coercive sanctions describe are adequate to ensure future compliance.

4  **IV.    CONCLUSION**

5          The Court finds that Imperial is in civil contempt based on its sale and marketing of the

6  SUPERSWEEP PLUS.  Monetary sanctions are awarded in the amount of $1,286,986.63.  All

7  packaging, promotional, and sales materials using the SUPERSWEEP or SUPERSWEEP PLUS

8  terms shall be turned over to a third party for destruction.  The April 30, 2004 Injunction shall be

9  amended to require that any future product using the SUPERSWEEP term shall require prior

10 approval by this Court based on a demonstration that the product is effective.  The parties are

11 directed to meet and confer and submit a proposed stipulation to the Court within thirty (30) calendar

12 days of this Order regarding: 1) the schedule and requirements for the destruction of SUPERSWEEP

13 packaging; and 2) the specific amendments to the Injunction requiring prior Court approval for future

14 SUPERSWEEP fire log products.

15         IT IS SO ORDERED.

16

17 Dated: November 21, 2006

18

19                                              JOSEPH C. SPERO
                                               United States Magistrate Judge
20

21

22

23

24

25

26

27

28

21